

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| HARLAN J. BERK,　　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　　) | |
| 　　　　　　Plaintiff,　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　　) | No. 12 CV 8074 |
| 　　v.　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　　) | Hon. Charles R. Norgle |
| HEALTH CARE SERVICE CORPORATION,　) | |
| d/b/a BLUE CROSS BLUE SHIELD OF　　　) | |
| ILLINOIS,　　　　　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　　) | |
| 　　　　　　Defendant.　　　　　　　　　) | |

## OPINION AND ORDER

Plaintiff Harlan J. Berk ("Plaintiff") sues Defendant Health Care Service Corporation, d/b/a Blue Cross Blue Shield of Illinois ("Defendant") under the Employee Retirement Income Security Act ("ERISA") for alleged violations in calculating Plaintiff's payment obligations under its health care insurance plan. Before the Court is Defendant's Motion to Dismiss Plaintiff's Fourth Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the motion is granted and Plaintiff's Fourth Amended Complaint is dismissed with prejudice.

## I. BACKGROUND

### A. Facts

Defendant is a health care insurance provider. The allegations in the Fourth Amended Complaint revolve around the employee health care insurance plan that Plaintiff's employer, Harlan Berk, Ltd., entered into with Defendant. Plaintiff is a participant in the plan. Specifically, Plaintiff contests how Defendant calculates participating employees' coinsurance

and other payment obligations in relation to Defendant's outside agreements with health care providers.

As part of its business as a health care insurance provider, Defendant enters into agreements with hospitals and other health care providers, in which the providers agree to provide services to Defendant's participants for certain contracted amounts. These contracted amounts are often much lower than a provider's normal billing rates. As a result of these contracts, Defendant is able to reduce the overall amount that the participants in its various plans pay for health care services. Pursuant to the insurance agreement at issue here, the reduction that is applied to the coinsurance and other payment obligations of Plaintiff and other participants is based upon an estimate known as the Average Discount Percentage ("ADP"), not the actual reductions based on the specific agreements between Defendant and the health care providers. Plaintiff's insurance agreement provides a detailed definition of the ADP:

> AVERAGE DISCOUNT PERCENTAGE . . . means a percentage discount determined by Blue Cross and Blue Shield that will be applied to a Provider's Eligible Charge for Covered Services rendered to you by Hospitals and certain other health care facilities for purposes of calculating Coinsurance amounts, deductibles, out-of-pocket maximums and/or any benefit maximums. The ADP will often vary from Claim-to-Claim. The ADP applicable to a particular Claim for Covered Services is the ADP, current on the date the Covered Service is rendered, that is determined by Blue Cross and Blue Shield to be relevant to the particular Claim. The ADP reflects Blue Cross and Blue Shield's reasonable estimate of average payments, discounts and/or other allowances that will result from its contracts with Hospitals and other facilities under circumstances similar to those involved in the particular Claim, reduced by an amount not to exceed 15% of such estimate, to reflect related costs. (See provisions of this Policy regarding "BLUE CROSS AND BLUE SHIELD'S SEPARATE FINANCIAL ARRANGEMENTS WITH PROVIDERS.") In determining the ADP applicable to a particular Claim, Blue Cross and Blue Shield will take into account differences among Hospitals and other facilities, Blue Cross and Blue Shield's contracts with Hospitals and other facilities, the nature of the Covered Services involved and other relevant factors.

2

Fourth Am. Compl. ¶ 22. The ADP and its effect on Plaintiff and other participants is explained as follows:

> To help you understand how Blue Cross and Blue Shield's separate financial arrangements with Providers work, please consider the following example:
>
> a. Assume you go into the Hospital for one night and the normal, full amount the Hospital bills for Covered Services is $1,000. How is the $1,000 bill paid?
>
> b. You personally will have to pay the deductible and Coinsurance amounts set out in your Certificate.
>
> c. However, for purposes of calculating your deductible and Coinsurance amounts, and whether you have reached any out-of-pocket or benefit maximums, the Hospital's Eligible Charge would be reduced by the ADP applicable to your Claim. In our example, if the applicable ADP were 30%, the $1,000 Hospital bill would be reduced by 30% to $700 for purposes of calculating your deductible and Coinsurance amounts, and whether you have reached any out-of-pocket or benefit maximums.
>
> d. Assuming you have already satisfied your deductible, you will still have to pay the Coinsurance portion of the $1,000 Hospital bill after it has been reduced by the ADP. In our example, if your Coinsurance obligation is 20%, you personally will have to pay 20% of $700, or $140. You should note that your 20% Coinsurance is based on the full $1,000 Hospital bill, after it is reduced by the applicable ADP.
>
> e. After taking into account the deductible and Coinsurance amounts, Blue Cross and Blue Shield will satisfy its portion of the Hospital bill. In most cases, Blue Cross and Blue Shield has a contract with Hospitals that allows it to pay less, and requires the Hospital to accept less, than the amount of money Blue Cross and Blue Shield would be required to pay if it did not have a contract with the Hospital.
>
> So, in the example we are using, since the full Hospital bill is $1,000, your deductible has already been satisfied, and your Coinsurance is $140, then Blue Cross and Blue Shield has to satisfy the rest of the Hospital bill, or $860. Assuming Blue Cross and Blue Shield has a contract with the Hospital, Blue Cross and Blue Shield will usually be able to satisfy the $860 bill that remains after your Coinsurance and deductible, by paying less than $860 to the Hospital, often substantially less than $860. Blue Cross and Blue Shield receives, and keeps for its own account, the difference between the $860 bill and whatever Blue Cross and Blue Shield ultimately pays under its contracts with Plan Providers, and neither you nor your Group are entitled to any part of these savings.

Fourth Am. Compl. Ex. A, pt. 3, at pp. 94-95.

**B. Procedural History**

This action was removed to this Court on October 9, 2012. After almost two years, this case has stalled at the earliest stage of the proceedings, despite approximately four attempts to file a sufficient complaint. On August 20, 2013, the Court denied Plaintiff's motion to remand and granted Defendant's first motion to dismiss. Plaintiff was granted leave to file a first amended complaint, which he timely filed on September 13, 2013, albeit, erroneously titled "Second Amended Complaint." In response, Defendant filed a second motion to dismiss, or in the alternative, a motion for a more definite statement, arguing that that the amended complaint was unintelligible. The Court granted Defendant's motion for a more definite statement, to which Plaintiff responded by filing a second amended complaint, titled "Third Amended Complaint," on October 23, 2013. Shortly thereafter, Defendant filed a motion to strike Plaintiff's Second Amended Complaint for failure to file a more definite statement as ordered by the Court, and to strike Plaintiff's Third Amended Complaint for failure to seek leave to amend from the Court pursuant to Rule 15(a). The Court granted the motion to strike both complaints on November 1, 2013. On November 15, 2013, Plaintiff filed a More Definite Statement, despite the fact that there was no operative complaint on file at the time. To resolve this procedural quagmire, Plaintiff was granted leave to file a Fourth Amended Complaint, which he filed on January 3, 2014.

Plaintiff's Fourth Amended Complaint contains two counts under ERISA. Count One is a claim for benefits under 29 U.S.C. § 1132(a)(1)(B), and Count Two alleges violations of § 1104(a)(1) and § 1106 for breach of alleged fiduciary duties. Defendant filed the instant motion to dismiss pursuant to 12(b)(1) for lack of standing, and therefore subject matter jurisdiction, because Plaintiff fails to allege an injury, and pursuant to 12(b)(6), for failure to

4

state a claim under ERISA. The motion is fully briefed and before the Court. For the following reasons, the motion to dismiss is granted.

## II. DISCUSSION

### A. Standard of Decision

#### *1. Rule 12(b)(1)*

A motion to dismiss under Rule 12(b)(1) challenges the subject matter jurisdiction of a complaint. Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction is a threshold question, the first question in every case, because without jurisdiction the court cannot proceed at all." In re ALT Hotel, Inc., 479 B.R. 781, 805 (Bankr. N.D. Ill. 2012) (internal quotation marks and citations omitted); see also Craig v. Ontario Corp., 543 F.3d 872, 874 (7th Cir. 2008) ("Naturally, the first question [the Court] must confront is that of jurisdiction."). Here, Defendant argues that Plaintiff lacks subject matter jurisdiction to proceed because he fails to allege standing.

"Standing is an essential component of Article III's case-or-controversy requirement." Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 443 (7th Cir. 2009). "[T]he irreducible constitutional minimum of standing contains three elements[:]" (1) "an injury in fact" that is concrete and particularized and not conjectural or hypothetical; (2) "a causal connection between the injury and the conduct complained of;" and (3) that it is likely "that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S 555, 560-561 (1992) (internal quotation marks and citation omitted). "As a jurisdictional requirement, the plaintiff bears the burden of establishing standing." Apex Digital, Inc., 572 F.3d at 443. "Because standing is 'not [a] mere pleading requirement[] but rather an indispensable part of the plaintiff's case, [it] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive

stages of the litigation.'" Id. (quoting Lujan, 504 U.S at 561) (alterations in original). Facial challenges to jurisdiction "require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction. . . . In the context of facial challenges . . . the court does not look beyond the allegations in the complaint, which are taken as true for purposes of the motion." Id. at 443-444. (emphasis in original).

### 2. *Rule 12(b)(6)*

With respect to Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." Indep. Trust Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 935 (7th Cir. 2012) (internal quotation marks and citation omitted). The Court accepts "all well-pleaded allegations of the complaint as true and view[s] them in the light most favorable to the plaintiff." Id. at 934 (internal quotation marks and citation omitted). Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (citation omitted). A plaintiff, however, can plead himself out of court by "pleading facts that show that he has no legal claim." Atkins v. City of Chi., 631 F.3d 823, 832 (7th Cir. 2011) (citations omitted).

### B. Standing

First, Defendant argues that Plaintiff lacks standing because he fails to allege that he has suffered an injury in fact from the alleged ERISA violations. Specifically, Plaintiff fails to allege that he has ever been charged or billed for any services by Defendant under the contested insurance contract and ADP billing scheme. Thus, even assuming that Defendant's actions

violate ERISA, Plaintiff has not been injured as a result. Nevertheless, Plaintiff argues that he has standing to assert a claim for declaratory relief to determine whether there has been a breach of a fiduciary duty. Plaintiff notes that under ERISA, a person with a "colorable claim to vested benefits" may bring a claim against a plan for benefits, and that "requirements for a colorable claim are not stringent; a plaintiff need have only a nonfrivolous claim for the benefit in question." Kamler v. H/N Telecom. Servs., Inc., 305 F.3d 672, 678 (7th Cir. 2002) (internal quotation marks and citations omitted). The Fourth Amended Complaint, however, does not contain a claim for declaratory relief; nor does Plaintiff allege any vested benefits to which he is currently entitled as a result of services rendered. Therefore, the Court finds that Plaintiff lacks standing to proceed on his allegations against Defendant. Accordingly, the Fourth Amended Complaint is dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

## C.  Failure to State a Claim

Defendant also argues that the Fourth Amended Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6). Plaintiff alleges that Defendant fails to disclose the financial agreements which it has with health care providers, and the exact amounts which are used to calculate a participant's payment obligation under the ADP scheme in violation of ERISA. In addition, Plaintiff alleges that the use of the ADP breaches Defendant's fiduciary duty to the plan participants under ERISA because, by using the ADP instead of the exact amount of the discounts pursuant to the contracts between Defendant and the providers, Defendant is obtaining a financial benefit at the expense of the plan participants.

### 1.  Judicial Estoppel

As an initial matter, Plaintiff contends that Defendant's arguments are barred by principles of judicial estoppel. "Judicial estoppel is a flexible equitable doctrine designed to

prevent the perversion of the judicial process." Grochocinski v. Mayer Brown Rowe & Maw, LLP, 719 F.3d 785, 795 (7th Cir. 2013) (internal quotation marks and citation omitted). "The doctrine protects the courts from being 'manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories.'" Id. (quoting Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp., 179 F.3d 523, 527 (7th Cir. 1999)). Here, Plaintiff argues that because Defendant took the position that Plaintiff's claims were preempted by ERISA in opposition to his motion to remand, it cannot now argue that Plaintiff fails to state a claim under ERISA. Defendant, however, has not taken contrary or inconsistent positions. In fact, it is quite possible for certain types of claims to be governed by ERISA, yet be insufficiently pleaded under a specific provision of the statute. It is not, therefore, a contrary position for Defendant to argue that Plaintiff's allegations seeking recovery under an employee benefits plan are governed by ERISA, while at the same time arguing that he fails to properly allege a claim under §§ 1132(a)(1), 1104(a)(1), and 1106. Accordingly, the Court rejects Plaintiff's argument with respect to judicial estoppel.

### 2. Count One: 29 U.S.C. § 1132(a)(1)(b)

As to Count One, Defendant argues that Plaintiff fails to state a claim for unpaid benefits under § 1132(a)(1)(B) and that the contract language as it relates to the ADP is not ambiguous based on the specific allegations in the complaint. Pursuant to § 1132(a)(1)(B), "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "An ERISA § 502(a)(1)(B) [§ 1132(a)(1)(b)] claim is 'essentially a contract remedy under the terms of the plan.'" Larson v. United Healthcare Ins. Co., 723 F.3d 905, 911 (7th Cir. 2013) (quoting Ponsetti v. GE Pension

Plan, 614 F.3d 684, 695 (7th Cir. 2010)). "The Supreme Court has explained that the remedy provided in § 1132(a)(1)(B) is designed 'to protect contractually defined benefits,' and in keeping with its contract-law foundations, the cause of action offers typical contract forms of relief. . . ." Id. (quoting Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 148 (1985)).

Among other things, Plaintiff seeks reformation of the insurance contract to eliminate the use of the ADP. He alleges that Defendant's failure to disclose the specific financial arrangements that it enters into with the health care providers, as well as the ambiguous terms of the contract explaining this scheme, prevent plan participants, like himself, from accurately calculating their payment obligations. Additionally, Plaintiff seeks recovery of the money that he would have saved on his coinsurance and other payments had he been given the benefit of the full discounts as contracted between Defendant and the health care providers, as opposed to the estimated ADP which is often lower. As Defendant notes, however, the relief requested by Plaintiff is contrary to the express terms of the insurance plan for which his employer and Defendant bargained.

Indeed, as pleaded in the Fourth Amended Complaint and the attached contract, the terms of the plan explaining the ADP scheme are not ambiguous as Plaintiff concludes; rather, they are specifically outlined and defined. And "in determining the sufficiency of the complaint, the court may rely on exhibits to the complaint whenever the allegations of the complaint are materially inconsistent with those exhibits." Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc., 474 F.3d 463, 466 (7th Cir. 2007) (citation omitted). In addition, the contract discloses the fact that Defendant has separate financial arrangements with healthcare providers—agreements from which the participants are not entitled to benefit. While Plaintiff may prefer to have his benefits calculated in another manner, it is simply not the agreement that his employer

reached with Defendant. The contract specifically states that "[n]either the Group nor you [a participant] are entitled to receive any portion of any such payments, discounts and/or other allowances in excess of the ADP." Fourth Am. Compl. Ex. A, pt. 3, at p. 94. Accordingly, the Court finds that Plaintiff fails to state a valid claim for relief under the express and unambiguous terms of the insurance contract, which provides for discounts calculated using only the ADP. Count One, therefore, is dismissed pursuant to Rule 12(b)(6).

### 3. *Count Two: 29 U.S.C. §§ 1104(a)(1) and 1106*

As to Count Two, Defendant argues that Plaintiff fails to state a claim under §§ 1104(a)(1) and 1106 because he fails to adequately allege that Defendant has a fiduciary duty. Section 1104(a)(1) provides, *inter alia*, that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Section 1106 generally describes prohibited transactions between a plan and a fiduciary. Section 1002 defines a fiduciary as follows:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). However, a party "may be an ERISA fiduciary for some purposes and not for others." Caremark, Inc., 474 F.3d at 472. Thus, "[t]o make out a claim for breach of fiduciary duty under ERISA, [Plaintiff] must show that [Defendant] was a fiduciary as that term is defined in the statute and that [Defendant] was acting in its capacity as a fiduciary at the time it took the actions that are the subject of the complaint." Id. at 471-472.

> "In every case charging breach of ERISA fiduciary duty, [] the threshold question is not whether the actions of some person employed to provide services under a

10

plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) *when taking the action subject to complaint*."

Leimkuehler v. Am. United Life Ins. Co., 713 F.3d 905, 913 (7th Cir. 2013) (quoting Pegram v. Herdrich, 530 U.S. 211, 226 (2000)).

Here, Plaintiff alleges only that "29 U.S.C. § 1104 and 29 U.S.C. § 1106 impose upon Defendant a fiduciary duty that bars it from obtaining or enjoying any separate benefit, financial or otherwise, (§ 1104) or utilizing any Plan asset (§ 1106) to the detriment of its Plan participants and without according its Plan participants the financial benefits derived from its relationship with the Plan participants." Fourth Am. Compl. ¶ 58. Plaintiff further alleges that the "ADP and EOB [Explanation of Benefits] scheme provides Defendant with a financial benefit at the expense of Plaintiffs." Id. ¶ 59. Sections 1104 and 1106, however, do not impose fiduciary duties. A fiduciary duty must be alleged in accordance with § 1002 and the specific facts at issues in this case—namely, whether Defendant is acting as a fiduciary when implementing the ADP scheme as provided by the insurance contract, as opposed to using the savings as provided by the financial agreements between Defendant and the health care providers. Because Plaintiff has no duty to pass on the savings from the financial agreements in accordance with the express terms of the contract, it is not a fiduciary with respect to the allegations in the complaint. See Caremark, Inc., 474 F.3d at 475 ("Under any reading of the contracts, Caremark was not obliged to pass along all of the savings it negotiated with drug retailers. Failure to pass along all of the savings is the core of [plaintiff's] complaint. [Plaintiff] did not allege that Caremark breached a duty to negotiate rates with [plaintiff's] existing network or that Caremark failed to come to the bargaining table with the best rates it could negotiate with retailers as the starting point in the discussion. Although Caremark might have been a fiduciary for some purposes, it was not a

fiduciary for the purposes named in this count of [plaintiff's] complaint."). Therefore, Plaintiff fails to state a claim under §§ 1104 and 1106 for breach of fiduciary duties. Accordingly, Count Two is dismissed pursuant to Rule 12(b)(6).

### 4. Dismissal With Prejudice

Lastly, Defendant argues that Plaintiff's complaint should be dismissed with prejudice because, after more than four attempts, Plaintiff has once again failed to state a claim for relief and establish jurisdiction before this Court. "It is true that the pleading rules favor decisions on the merits rather than technicalities, and also that leave to amend pleadings should be freely given." Standard v. Nygren, 658 F.3d 792, 800-801 (7th Cir. 2011) (internal citations omitted). "But these general principles have some limits. Leave to replead need not be allowed in cases of 'repeated failure to cure deficiencies by amendments previously allowed.'" Id. at 801 (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). Such is the case here. Plaintiff has had numerous opportunities to properly plead his case in the last two years, but he has failed to do so. Accordingly, the Fourth Amended Complaint is dismissed with prejudice.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted and Plaintiff's Fourth Amended Complaint is dismissed with prejudice.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: May 6, 2014

12